IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

ETHOX CHEMICALS, LLC and          :
JAMES TANNER                       :
                                   :
            *Plaintiffs*,          :     CIVIL ACTION NO.
                                   :
v.                                 :
                                   :
                                   :
THE COCA-COLA COMPANY              :
                                   :
            *Defendant*.           :

## COMPLAINT

Plaintiffs Ethox Chemicals, LLC ("Ethox") and James Tanner ("Tanner") (together,

"Plaintiffs"), by and through their undersigned counsel, for their complaint against defendant

The Coca-Cola Company ("Coca-Cola"), allege as follows:

### NATURE OF CLAIMS

1.      This is an action arising from Coca-Cola's misappropriation of Ethox and

Tanner's inventive molecule called "PEM," *i.e.*, bis(2-phenoxyethyl)terephthalate.

2.      Plastic bottles used for soda and other beverages are often made from a plastic or

polymer called PET or polyethylene terephthalate.  PET bottles provide advantages over glass

and metal containers due to, *inter alia*, their light weight.  One disadvantage of PET is that,

although appearing solid, PET bottles allow gases, including soda carbonates, to escape, limiting

the shelf life of products in the bottles.

3.      Ethox chemist Tanner conceived of and reduced to practice PEM, which offers

the positive qualities of PET with added advantages as a gas barrier limiting the permeability of

the bottles.  This gas barrier characteristic increases the shelf-life of products like soda and also

expands the universe of beverages that can be shipped and stored in plastic bottles to include beer.

4.    By this action, Ethox and Tanner seek to have Tanner named as a co-inventor on a patent and patent applications filed by and assigned to Coca-Cola and seek to hold Coca-Cola accountable for misappropriating and misusing Ethox-owned technology, including the PEM molecule.

## THE PARTIES

5.    Ethox is wholly owned by Piedmont Chemical Industries, Inc., a privately-owned chemical manufacturer from North Carolina. Ethox has its principal place of business at 1801 Perimeter Road, Greenville, South Carolina 29605.

6.    Tanner is a Senior Research Chemist at Ethox and a polymer chemist by training. Tanner resides at 1421 Roper Mountain Road, #404, Greenville, South Carolina 29615 and works in Ethox's offices in Greenville, South Carolina.

7.    Upon information and belief, Coca-Cola is a corporation organized under the laws of Delaware, having its principal place of business at One Coca-Cola Plaza, Atlanta, Georgia 30313. Coca-Cola is subject to the jurisdiction of this Court and may be served with process by second original through its registered agent, CT Corporation System, 2 Office Park Court, Suite 103, Columbia, South Carolina 29223.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 as this case arises under the Patent Act.

9.    This Court has supplemental jurisdiction over the claims in this Complaint that arise under the statutory and common law of the State of South Carolina pursuant to 28 U.S.C.

§ 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

10.    Venue in this district and this division is proper pursuant to 28 U.S.C. § 1391 and Local Rule 3.01 because a substantial part of the events on which the claims are based occurred in the Greenville division of the District of South Carolina, defendant is authorized to conduct business in this District, and defendant has intentionally availed itself of the laws and markets within this District through the promotion, marketing, distribution, and sale of Coca-Cola products. Coca-Cola is subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

11.    Ethox, located on a forty-acre site in the Donaldson Industrial Park, is a chemical company founded in 1968. Ethox provides assistance with the chemical arts, including chemical synthesis and economic feasibility assessments regarding the use and manufacture of chemical entities. Ethox manufactures and sells dozens of chemical products, including ethoxylated alcohols, alkyl phenols, fatty acids, fatty amines, glycerides, and sorbitan esters. Ethox also manufactures and sells surfactants, block polymers, personal care products, household products, and specialty products.

12.    In about February 2009, Coca-Cola approached Ethox and third party PolyTech Resources, LLC ("PolyTech") to assist Coca-Cola with the development and assessment of a genus of molecules developed by or for Coca-Cola ("the Project"). This genus of molecules sought to provide greater barrier resistance for plastic bottles.

13.    On or about May 29, 2009, Coca-Cola, Ethox, and PolyTech met to discuss the project. During this meeting, Coca-Cola and PolyTech requested Ethox to make two chemical agents, bis(hydroxyethyl)terephthalate ("BHET") and bis(2-benzoyloxy)ethyl) terephthalate) ("BP01"), and to determine the economic feasibility of synthesizing and manufacturing BP01.

3

14.    Prior to approaching Ethox about the Project, Coca-Cola filed, on December 9, 2008, two provisional patent applications at the United States Patent and Trademark Office ("PTO"), U.S. Provisional Patent Application Serial No. 61/121,036 ("Coca-Cola Provisional 1") (Exhibit A attached hereto) and U.S. Provisional Patent Application Serial No. 61/121,034 ("Coca-Cola Provisional 2") (Exhibit B attached hereto).

15.    Coca-Cola Provisional 1, titled "Container and Composition for Enhanced Gas Barrier Properties," lists Robert Kriegel, Xiaoyan Huang, and Robert Schiavone as co-inventors. *See Exhibit A, p. i.*

16.    Coca-Cola Provisional 1 is directed to "a polyester container with enhanced gas barrier properties.  The polyester container comprises a polyester composition comprised of a polyester and a gas barrier enhancing additive." *See Exhibit A, p. 2 (Summary of the Invention).* According to the Summary of the Invention, the "gas barrier enhancing additive comprises a compound having the chemical structure of Formula I or Formula II:



or



*See Exhibit A, pp. 2-5.*

17.    Coca-Cola Provisional 1 specifically identifies, *e.g.*, by name and/or structure, and claims molecules falling within the scope of Formula I or Formula II. *See Exhibit A, pp. 11-20, 40-43, 50-59.*

18.    Both BHET and BP01 are specifically identified in Coca-Cola Provisional 1. *See Exhibit A, pp. 40-42.*

19.    Coca-Cola Provisional 1 does not specifically identify or claim PEM. *See Exhibit A.*

20.    At the time of the filing of the Coca-Cola Provisional 1, Coca-Cola and its representatives had not conceived of PEM.

21.    Coca-Cola Provisional 2, titled "PET Container and Compositions Having Enhanced Mechanical Properties and Gas Barrier Properties," lists Robert Kriegel, Xiaoyan Huang, and Penescu Mihaela as co-inventors. *See Exhibit B, p. i.*

22.    Coca-Cola Provisional 2 is directed to "a polyester container with enhanced mechanical properties comprising a polyester composition comprised of polyester and a creep control agent. According to another embodiment, a polyester composition is provided comprising a polyester, a creep control agent and optionally a gas barrier additive." *See Exhibit B, p. 2.* According to the Summary of the Invention, the "gas barrier enhancing additive [has] the chemical structure of Formula I or Formula II . . . :

*See Exhibit B, p. 30.*

23.     Coca-Cola Provisional 2 specifically identifies, *e.g.*, by name and/or structure, and claims molecules falling within the scope of Formula I or Formula II. *See Exhibit B, pp. 30-40, 57-61.*

24.     Coca-Cola Provisional 2 does not specifically identify or claim PEM. *See Exhibit B.*

25.     At the time of the filing of the Coca-Cola Provisional 2, Coca-Cola and its representatives had not conceived of PEM.

26.     By June 22, 2009, over six months after the Coca-Cola provisionals were filed, PolyTech provided to Coca-Cola and Ethox a report regarding a process for synthesizing BP01.

27.     In the period from June 2009 to August 2009, Tanner worked on the Project. Tanner determined that the commercial synthesis in the purity required of BP01, the molecule found in Example 1 of Coca-Cola Provisional 1, was not economically feasible.

28.     By August 26, 2009, Tanner conceived of and reduced to practice the PEM molecule, which has the following structure:

29.    On August 26, 2009, Tanner sent an email to T. Edwin Freeman ("Freeman"), a member of Coca-Cola's Global Research and Innovation Group, offering Ethox's PEM as a proposed alternative to BP01. To aid Coca-Cola in its analysis, Tanner attached a figure of the chemical structure of PEM to the email. Tanner also copied Charles Palmer and Chris Welch of Ethox on the email.

30.    When Tanner transmitted the August 26, 2009 email to Freeman, Coca-Cola understood that the communications between Coca-Cola and Ethox were confidential and to be treated as such by all parties.

31.    On August 31, Freeman replied to Tanner's August 26, 2009 email and expressed Coca-Cola's interest in the new molecule. Freeman indicated that the "molecule falls well into the family of structures that are of interest to us" and that the "next steps would be to understand the cost structure around production, and to provide us with a high purity sample, so that we can investigate whether it meets our performance requirements."

32.    On or about September 15, 2009, Tanner and Ethox sent a 500g sample of PEM, lot #JTT-7-87, to Freeman.

33.    On October 14, 2009, Freeman sent an email to Chris Welch of Ethox and copied Tanner, Linda Liu of Coca-Cola, M. Andrews of PolyTech, Robert Schiavone of PolyTech, Xiaoyan Huang of Coca-Cola, and Robert Kriegel of Coca-Cola. Freeman's email indicated that he received a preliminary report of 99.4% purity for the PEM sample provided by Tanner. Freeman's email further indicated that "[b]ecause the analytical data is encouraging, the next

7

step is to determine the efficacy of the material in the intended application. We hope to have that completed in a couple of weeks." Freeman asked Ethox for the PEM's estimated cost.

34.    On October 23, 2009, Ethox provided Freeman with estimated per pound pricing for PEM.

35.    On October 27, 2009, Freeman requested a 2-5 kg additional sample of PEM for further testing.

36.    On or about November 3, 2009, Tanner sent Freeman the requested second sample of PEM, lot #JTT-8-95.

37.    Upon information and belief, after Coca-Cola became aware of the unique and innovative qualities of PEM, Coca-Cola, by its representatives, decided to steal PEM for its own.

38.    On December 2, 2009, Coca-Cola filed two utility patent applications at the PTO, U.S. Patent Application Serial No. 12/629,379 ("Coca-Cola Utility Application 1") (Exhibit C attached hereto) and U.S. Patent Application Serial No. 12/629,657 ("Coca-Cola Utility Application 2") (Exhibit D attached hereto).

39.    At the time of the filing of Coca-Cola Utility Applications 1 and 2, Coca-Cola knew or had reason to know that it had no rights to PEM and that any rights in PEM belonged to Ethox and/or Tanner.

40.    At the time of the filing of Coca-Cola Utility Applications 1 and 2, Coca-Cola had not informed Ethox or Tanner that it had included the PEM molecule within each application's disclosure.

41.    Upon information and belief, at the time of the filing of Coca-Cola Utility Applications 1 and 2, Coca-Cola knew or should have known that PEM would become publicly-disclosed at the time of publication of Coca-Cola Utility Applications 1 and 2 by the PTO.

42.    Coca-Cola Utility Application 1, titled "Container and Composition for Enhanced Gas Barrier Properties," lists Robert Kriegel, Xiaoyan Huang, Robert Schiavone, and T. Edwin Freeman as co-inventors. *See Exhibit C, pp. i-ii.*

43.    Like Coca-Cola Provisional 1, Coca-Cola Utility Application 1 is directed to "a polyester container with enhanced gas barrier properties. The polyester container comprises a polyester composition comprised of a polyester and a gas barrier enhancing additive." *See Exhibit C, p. 2.* The "gas barrier enhancing additive comprises a compound having the chemical structure of Formula I or Formula II:

$$X-(X^1)_s-C(=O)-O-(X^2)_t-X^3-(X^4)_u-O-C(=O)-(X^5)_v-X^6 \quad (I)$$

or

$$X-(X^1)_s-O-C(=O)-(X^2)_t-X^3-(X^4)_u-C(=O)-O-(X^5)_v-X^6 \quad (II)$$

."

*See Exhibit C, pp. 2-5.*

44.    Like Coca-Cola Provisional 1, Coca-Cola Utility Application 1 specifically identifies, *e.g.*, by name and/or structure, and claims molecules falling within the scope of Formula I or Formula II. *See Exhibit C, pp. 12-23, 43-45, 59.*

45.    Unlike Coca-Cola Provisional 1, Coca-Cola Utility Application 1 specifically identifies and claims PEM. *See Exhibit C, pp. 23, 59, 68.*

46.    At the time of the filing of Coca-Cola Utility Application 1, Coca-Cola knew that Tanner and/or Ethox had invented PEM.

47.    At the time of the filing of Coca-Cola Utility Application 1, Coca-Cola knew that only Tanner and/or Ethox had rights to PEM.

48.    Despite its knowledge at the time of the filing of Coca-Cola Utility Application 1, upon information and belief, Coca-Cola decided not to include Tanner as a co-inventor on the application with the intent of misappropriating the PEM molecule for its own use.

49.    Coca-Cola Utility Application 2 titled "PET Container and Compositions Having Enhanced Mechanical Properties and Gas Barrier Properties," lists Robert Kriegel, Xiaoyan Huang, Penescu Mihaela, Robert Schiavone, and Freeman as co-inventors. *See Exhibit D, pp. i-ii.*

50.    Like Coca-Cola Provisional 2, Coca-Cola Utility Application 2 is directed to "a polyester container with enhanced mechanical properties comprising a polyester composition comprised of polyester and a creep control agent. According to another embodiment, a polyester composition is provided comprising a polyester, a creep control agent and optionally a gas barrier additive." *See Exhibit D, p. 2.* The "gas barrier enhancing additive [has] the chemical structure of Formula I or Formula II . . . :



*See Exhibit D, p. 30.*

51.   Like Coca-Cola Provisional 2, Coca-Cola Utility Application 2 specifically identifies, *e.g.*, by name and/or structure, and claims molecules falling within the scope of Formula I or Formula II. *See Exhibit D, pp. 31-42, 49, 64-69.*

52.   Unlike Coca-Cola Provisional 2, Coca-Cola Utility Application 2 specifically identifies and claims PEM. *See Exhibit D, pp. 42, 69.*

53.   At the time of the filing of Coca-Cola Utility Application 2, Coca-Cola knew that Tanner and/or Ethox had invented PEM.

54.   At the time of the filing of Coca-Cola Utility Application 2, Coca-Cola knew that only Tanner and/or Ethox had rights to PEM.

55.   Despite its knowledge at the time of the filing of Coca-Cola Utility Application 2, upon information and belief, Coca-Cola decided not to include Tanner as a co-inventor on the application with the intent of misappropriating the PEM molecule for its own use.

56.   On December 8, 2009, Coca-Cola filed two international patent applications, PCT/US2009/067058 ("Coca-Cola PCT 1") (Exhibit E attached hereto) and PCT/US2009/067127 ("Coca-Cola PCT 2") (Exhibit F attached hereto).

57.   At the time of the filing of Coca-Cola PCTs 1 and 2, Coca-Cola had not informed Ethox or Tanner that it had included the PEM molecule within each application's disclosure.

58.   Coca-Cola PCT 1, which corresponds to Coca-Cola Utility Application 1, is titled "Container and Composition with Diester Gas Barrier Enhancing Compounds" and lists Robert Kriegel, Xiaoyan Huang, Robert Schiavone, and Freeman as co-inventors. *See Exhibit E, p. i.*

59.   Coca-Cola PCT 1 specifically identifies and claims PEM. *See Exhibit E, pp. 22, 54-55, 64.*

60.    Coca-Cola PCT 2, which corresponds to Coca-Cola Utility Application 2, is titled "PET Container and Compositions Having Enhanced Mechanical Properties and Gas Barrier Properties," lists Robert Kriegel, Xiaoyan Huang, Penescu Mihaela, Robert Schiavone, and Freeman as co-inventors. *See Exhibit F, p. i.*

61.    Coca-Cola PCT 2 specifically identifies and claims PEM. *See Exhibit F, pp. 40, 47, 65.*

62.    At the time of the filing of Coca-Cola PCTs 1 and 2, Coca-Cola knew that Tanner and/or Ethox had invented PEM.

63.    At the time of the filing of Coca-Cola PCTs 1 and 2, Coca-Cola knew that only Tanner and/or Ethox had rights to PEM.

64.    Despite its knowledge at the time of the filing of Coca-Cola PCTs 1 and 2, upon information and belief, Coca-Cola  decided not to include Tanner as a co-inventor on the application with the intent of misappropriating the PEM molecule for its own use.

65.    As a result of Coca-Cola's filings, on June 10, 2010, Coca-Cola Utility Application 1 published as U.S. Patent Publication No. 2010/0143546 (Exhibit G attached hereto) and Coca-Cola Utility Application 2 published as U.S. Patent Publication No. 2010/0143547 (Exhibit H attached hereto).

66.    At the time of the publication of Coca-Cola Utility Applications 1 and 2, Coca-Cola had hidden its use of the PEM molecule as part of its filings with the PTO and in two PCT applications.

67.    Coca-Cola PCT 1 published on June 17, 2010.  *See Exhibit E, p. i.*

68.    Coca-Cola PCT 2 published on July 8, 2010.  *See Exhibit F, p. i.*

12

69.    On January 5, 2012, Coca-Cola filed another utility patent application at the PTO, U.S. Patent Application Serial No. 13/344,318 ("Coca-Cola Utility Application 2B"), which published as U.S. Patent Publication No. 2012/0121837 on May 17, 2012 (Exhibit I attached hereto).

70.    On February 7, 2012, U.S. Patent No. 8,110,265 (Exhibit J attached hereto) issued from Coca-Cola Utility Application 2.

71.    Tanner is a co-inventor of at least Claims 11-14 of U.S. Patent No. 8,110,265.

## COUNT I:  CORRECTION OF INVENTORSHIP OF ISSUED PATENT

72.    Plaintiffs restate and reallege the foregoing allegations as if fully stated herein.

73.    The inventorship for U.S. Patent No. 8,110,265 is currently inaccurate in that it fails to list Tanner as co-inventor.

74.    Failure to include co-inventor Tanner on U.S. Patent No. 8,110,265 precludes Tanner and Ethox from, *inter alia*, claiming priority to the application wherein PEM was first published.

75.    Coca-Cola's taking and publicly disclosing the Ethox invention hinders patent protection, both domestic and foreign, by Tanner and Ethox on PEM.

76.    Pursuant to 35 U.S.C. § 256, Plaintiffs seek correction of inventorship of U.S. Patent No. 8,110,265 to include Tanner.

## COUNT II:  CORRECTION OF INVENTORSHIP OF PENDING PATENT APPLICATION

77.    Plaintiffs restate and reallege the foregoing allegations as if fully stated herein.

78.    The inventorship for U.S. Patent Application Serial No. 12/629,379 is currently inaccurate in that it fails to list Tanner as co-inventor.

79.     Failure to include co-inventor Tanner on U.S. Patent Application Serial No. 12/629,379 precludes Tanner and Ethox from, *inter alia*, claiming priority to the application wherein PEM was first published.

80.     Coca-Cola's taking and publicly disclosing the Ethox invention hinders patent protection, both domestic and foreign, by Tanner and Ethox on PEM.

81.     Pursuant to 35 U.S.C. § 256, Plaintiffs seek correction of inventorship of U.S. Patent Application Serial No. 12/629,379 to include Tanner.

### COUNT III:
### VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT
### (S.C. CODE ANN. §§ 39-5-10 *et seq.*)

82.     Plaintiffs restate and reallege the foregoing allegations as if fully stated herein.

83.     Coca-Cola engaged in unfair and deceptive acts in the conduct of its business relationship with Ethox with regard to the project.

84.     This case does not represent the first instance in which Coca-Cola has been accused of engaging in unfair methods of competition and deceptive business practices.

85.     Without Court intervention, there is a legitimate threat that Coca-Cola will continue to engage in unfair practices and repeat its deceptive business practices, and, as a result, Coca-Cola's actions adversely affect the public interest.

86.     Plaintiffs have been, and continue to be, damaged and irreparably harmed by the unfair and deceptive acts by Coca-Cola, whose effects on Plaintiffs will continue unless the Court enjoins Coca-Cola.

87.     Plaintiffs are entitled to actual damages resulting from Coca-Cola's misappropriation, prejudgment and post-judgment interest, and exemplary damages.

## COUNT IV: MISAPPROPRIATION

88.     Plaintiffs restate and reallege the foregoing allegations as if fully stated herein.

89.     Coca-Cola has copied or appropriated some confidential and proprietary information belonging to Plaintiffs which is not protected by either patent law, copyright law, trademark law, or any other traditional theory of exclusive rights, and Plaintiffs have been damaged thereby.

90.     Plaintiffs have been, and continue to be, damaged and irreparably harmed by the unfair and deceptive acts of Coca-Cola, which will continue unless the Court enjoins Coca-Cola.

91.     Plaintiffs are entitled to actual damages resulting from Coca-Cola's misappropriation, prejudgment and post-judgment interest, and exemplary damages.

## COUNT V: UNJUST ENRICHMENT

92.     Plaintiffs restate and reallege the foregoing allegations as if fully stated herein.

93.     Coca-Cola unfairly and deceptively took and publicly disclosed Plaintiffs' invention, *i.e.*, PEM.

94.     Coca-Cola received a benefit as a result of its taking and publicly disclosing Plaintiffs' invention and Coca-Cola has already realize a benefit from publicly disclosing Plaintiffs' invention and will continue to realize benefit from its use and disclosure.

95.     Coca-Cola's acquisition and exploitation of Plaintiffs' invention has benefited Coca-Cola to the detriment of Plaintiffs, and Plaintiffs have been irreparably damaged thereby.

96.     Coca-Cola and Plaintiffs were engaged in a business relationship in which inventions were disclosed between the parties under the auspices of confidentiality, making it inequitable for Coca-Cola to retain the benefits of Plaintiffs' invention without properly compensating Plaintiffs.

15

97.     Plaintiffs have been, and continue to be, damaged and irreparably harmed by Coca-Cola's taking and disclosing of Plaintiffs' invention, which will continue unless the Court enjoins Coca-Cola.

98.     Plaintiffs are entitled to actual damages resulting from Coca-Cola's unjust enrichment, prejudgment and post-judgment interest, and exemplary damages.

## COUNT VI: FRAUD

99.     Plaintiffs restate and reallege the foregoing allegations as if fully stated herein.

100.     Coca-Cola falsely and knowingly misrepresented that it would maintain Plaintiffs' disclosures in confidence.

101.     Plaintiffs relied on Coca-Cola's false representations and because Coca-Cola disclosed confidential information related to its invention, Plaintiffs have been irreparably damaged thereby.

102.     Plaintiffs have been, and continue to be, damaged and irreparably harmed by Coca-Cola's fraudulent activities, which will continue unless the Court enjoins Coca-Cola.

103.     Plaintiffs are entitled to actual damages resulting from Coca-Cola's fraud, prejudgment and post-judgment interest, and exemplary damages.

## COUNT VII: NEGLIGENT MISREPRESENTATION

104.     Plaintiffs restate and reallege the foregoing allegations as if fully stated herein.

105.     Coca-Cola falsely and knowingly misrepresented that it would maintain Plaintiffs' disclosures in confidence.

106.    Plaintiffs ignorantly relied on Coca-Cola's false representations and because Coca-Cola disclosed confidential information related to its invention, Plaintiffs have been irreparably damaged thereby.

107.    Coca-Cola owed Plaintiffs a duty of care to see that their joint business dealings were conducted truthfully.

108.    Coca-Cola breached its duty to Plaintiffs by taking and publicly disclosing Tanner's invention, *i.e.*, PEM.

109.    Plaintiffs relied on Coca-Cola's representations that the confidentiality of their business dealings would be maintained and Plaintiffs have suffered a pecuniary loss as a result of Coca-Cola's failure to maintain confidentiality of Tanner's invention, *i.e.*, PEM.

110.    Plaintiffs have been, and continue to be, damaged and irreparably harmed by Coca-Cola's fraudulent activities, which will continue unless the Court enjoins Coca-Cola

111.    Plaintiffs are entitled to actual damages resulting from Coca-Cola's negligent misrepresentation, prejudgment and post-judgment interest, and exemplary damages.

### COUNT VIII:  MISAPPROPPRIATION OF TRADE SECRETS (S.C. CODE ANN. §§ 39-8-10 *et seq.*)

112.    Plaintiffs restate and reallege the foregoing allegations as if fully stated herein.

113.    Coca-Cola's conduct as alleged in this Complaint constitutes misappropriation of trade secrets pursuant to South Carolina Trade Secrets Act, S.C. Code Ann. §§ 39-8-10 *et seq.*

114.    The PEM molecule is a trade secret as defined in S.C. Code Ann. § 39-8-20(5)(a).

115.    The formula for the PEM molecule derives economic value from not being generally known to, and not being readily ascertainable by proper means by the public or any other person who can obtain economic value from its disclosure or use.

116.   Plaintiffs took reasonable efforts to maintain the secrecy of the PEM formula.

117.   Coca-Cola owed a duty to Plaintiffs to maintain the secrecy of the PEM molecule.

118.   Coca-Cola disclosed the PEM molecule without Plaintiffs' express or implied consent when it included the formula for the PEM molecule it is patent applications without receiving consent from Plaintiffs.

119.   At the time of Coca-Cola's disclosure, Coca-Cola knew and had reason to know that it obtained the PEM molecule with the understanding that it had a duty to maintain its secrecy or limit its use.

120.   Plaintiffs have been, and continue to be, damaged and irreparably harmed by the unfair and deceptive acts of Coca-Cola, which will continue unless the Court enjoins Coca-Cola.

121.   Plaintiffs are entitled to actual damages resulting from Coca-Cola's misappropriation, prejudgment and post-judgment interest, and exemplary damages.

## COUNT IX:  IMPOSITION OF CONSTRUCTIVE TRUST

122.   Plaintiffs restate and reallege the foregoing allegations as if fully stated herein.

123.   Coca-Cola has derived benefits from its wrongful acquisition of the PEM formula.

124.   It is proper for this Court to impose a constructive trust on any profits Coca-Cola has derived or will derive from its wrongful activities and breaches pending the outcome of this litigation.

## DEMAND FOR JURY TRIAL

125.   Plaintiffs demand a trial by jury under Federal Rule of Civil Procedure 38 for all issues so triable.

## PRAYER FOR RELIEF

Plaintiffs pray for judgment in their favor and against Coca-Cola and request the following:

(a)     Issuance of an Order, pursuant to at least 35 U.S.C. § 256, requiring that the inventorship for U.S. Patent No. 8,110,265 be amended to include James Tanner;

(b)     Issuance of an Order, pursuant to at least 35 U.S.C. § 116, requiring that Coca-Cola amend inventorship for U.S. Patent Application Serial No. 12/629,379 to include James Tanner;

(c)     Issuance of an Order requiring that Coca-Cola file at least one divisional application from each of Coca-Cola PCT 1 and Coca-Cola PCT 2 claiming PEM and requiring that Coca-Cola assign said applications to Ethox;

(d)     Actual damages, including prejudgment and post-judgment interest, in an amount exceeding $75,000 but to be determined by the trier of fact;

(e)     Exemplary damages, in an amount to be determined by the trier of fact, from Coca-Cola for its taking and exploitation of PEM;

(f)     Injunctive relief barring Coca-Cola and any of its employees, agents, subsidiaries, parents or others in privity from making, using, selling, offering to sell or importing PEM and any other trade secrets of Ethox;

(g)     Damages available under, *inter alia*, S.C. Code. Ann § 39-5-140;

(h)     Damages available under, *inter alia*, S.C. Code Ann. § 39-8-40, including, but not limited to, the disgorgement of all profits derived from the use of PEM;

(i)     Attorneys' fees under, *inter alia*, S.C. Code Ann. § 39-8-80;

(j)     All costs and expenses for this action; and

(k)     Such further and other relief as the Court may deem just and proper.

Dated:  June 19, 2012

_____/s/ N. Heyward Clarkson III_____
N. Heyward Clarkson III, Esq.
Amy M. Snyder, Esq.
CLARKSON, WALSH, TERRELL & COULTER P.A.
1164A Woodruff Road
Greenville, South Carolina  29607
Telephone:  (864) 232-4400
Facsimile:  (864) 235-4399
hclarkson@clarksonwalsh.com
asnyder@clarksonwalsh.com

Of Counsel:
Philip L. Hirschhorn, Esq.
BUCHANAN INGERSOLL & ROONEY PC
1290 Avenue of the Americas, 30th Floor
New York, NY 10401
Telephone:  (212) 440-4400
Facsimile:  (212) 440-4401
philip.hirschhorn@bipc.com

Erin Dunston, Esq.
Rachel Elsby, Ph.D., Esq.
BUCHANAN INGERSOLL & ROONEY PC
1737 King Street, Suite 500
Alexandria, Virginia 22314
Telephone:  (703) 836-6620
Facsimile:  (703) 836-2021
erin.dunston@bipc.com
rachel.elsby@bipc.com