**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| ETHOX CHEMICALS, LLC and JAMES TANNER<br><br>*Plaintiffs*,<br><br>v.<br><br>THE COCA-COLA COMPANY<br><br>*Defendant*. | Civil Action No. 6:12-cv-01682-KFM |

**PLAINTIFFS' MOTION *IN LIMINE* #1 TO DISQUALIFY JOHN DOLL
AND MEMORANDUM IN SUPPORT THEREOF**

Plaintiffs Ethox Chemicals, LLC and Dr. James Tanner (together, "Ethox") hereby move *in limine* to request that Mr. John Doll be precluded from testifying on behalf of Defendant The Coca-Cola Company ("Coca-Cola"). Mr. Doll's First Expert Report and Supplemental Expert Report demonstrate that Mr. Doll, Coca-Cola's patent expert, is fundamentally confused regarding the issue of inventorship, which is the only issue in dispute. Because Mr. Doll's opinions are neither relevant nor reliable, they fail the threshold "gatekeeping" test and should be excluded.

**A.     THE COURT'S GATEKEEPING FUNCTION**

Rule 104(a) of the Federal Rules of Evidence applies to questions concerning the admissibility of putative expert witness testimony. *See* FED. R. EVID. 702 Advisory Committee Notes (2000 Amendment). As the proponent of Mr. Doll's opinions, it is Coca-Cola's burden to prove their admissibility. *See, e.g., Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987); *see also Cooper v. Smith & Nephew*, 259 F.3d 194, 200 (4th Cir. 2001).

Rule 702 of the Federal Rules of Evidence governs the introduction and admissibility of expert testimony. *See, e.g., Estate of Ravenell v. Pugmill Sys., Inc.*, No. 2:13-cv-00815, 2014 WL 7146848, at *2 (D.S.C. Dec. 15, 2014) (Exhibit F hereto). Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*FED. R. EVID. 702*. While trial courts are granted broad discretion when deciding whether to introduce and admit putative expert testimony, the Supreme Court has made clear that trial judges are gatekeepers who must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Ravenell*, 2014 WL 7146848, at *2 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). This "gatekeeping obligation," identified in *Daubert* and embodied in Rule 702, extends to *all* putative expert testimony. *Ravenell*, 2014 WL 7146848, at *2 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)). When deciding whether to introduce and admit putative expert testimony, trial judges are to be "guided by the overarching criteria of relevance and reliability." *Ravenell*, 2014 WL 7146848, at *2 (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)).

Because Mr. Doll's proposed testimony is neither relevant nor reliable, he should be precluded from testifying as an expert at trial.

**B.     MR. DOLL'S OPINIONS ARE NEITHER RELEVANT NOR RELIABLE**

One issue remains for trial: whether Dr. Tanner should be listed as a co-inventor for U.S. Patent No. 8,110,265 ("the '265 Patent") (Exhibit A hereto). *See Dockets 202, 220*. Opinions on

2

topics other than whether Dr. Tanner contributed to the conception of at least one claim of the '265 Patent are neither relevant nor reliable and should be excluded. *See* FED. R. EVID. 702.

### 1. Opinions on Topics Other Than Conception of the Claims Are Not Relevant

It is black-letter law that a person is "a joint inventor only if he contributes to the conception of the claimed invention." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004); *see also Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). Conception has been defined as "the touchstone of inventorship, the completion of the mental part of the invention. . . . It is 'the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.'" *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994).

The claims of the '265 Patent are directed to containers with particular gas barrier additive chemicals. *See Exhibit A (the '265 Patent), col. 36, l. 38 to col. 48, l. 53*. Conception for chemical substances, such as the gas barrier additives claimed in the '265 Patent, requires "knowledge of both the specific chemical structure of the compound and an operative method of making it." *Vanderbilt Univ. v. ICOS Corp.*, 601 F.3d 1297, 1301 (Fed. Cir. 2010).

Because Mr. Doll's opinion evidence on topics other than conception for the subject matter claimed in the '265 Patent does not have any tendency to make a fact of consequence in determining this co-inventorship dispute more or less probable than it would be without the evidence, that opinion evidence is not relevant. *See* FED. R. EVID. 401, 402.

#### a. Opinions Regarding PEM's Alleged Structural Similarity to BPO-1 are not Relevant to the Issue of Inventorship

Mr. Doll devotes a substantial portion of his First Expert Report (Exhibit B hereto) and portions of his Supplemental Expert Report (Exhibit C hereto) to the theory, for which no case law is cited, that Dr. Tanner is not a co-inventor because PEM is allegedly structurally similar to or an

3

obvious variant of BPO-1, a compound Coca-Cola provided to Ethox and Dr. Tanner at the outset of the co-development project. *See Exhibit B, ¶¶ 48-52, 67, 68, 77-95, 118; see Exhibit C, ¶¶ 1, 59.* As explained by Ethox's patent procedure expert, Mr. Stephen Kunin (whose Expert Reports are attached hereto as Exhibits D and E), those concepts do not bear on whether Dr. Tanner should be a co-inventor on the '265 Patent. *See Exhibit E, ¶¶ 30-32.*

The issue for trial is not whether the subject matter of Claim 11 of the '265 is patentable − the U.S. Patent and Trademark Office ("USPTO") has already decided that it is by issuing the patent. *See Exhibit E, ¶ 32.* The issue at trial is whether Dr. Tanner should be listed as a co-inventor on the '265 Patent because he contributed to the *conception* of at least Claim 11 of the '265 Patent in collaboration with one of the listed inventors, such as T. Edwin Freeman. *Id.*; *see also Exhibit E, ¶ 32; see also Exhibit D, ¶¶ 21-30, 87-94.*

Mr. Doll offers testimony that the structural similarity of BPO-1 and PEM make the suggestion of PEM by Dr. Tanner to Coca-Cola "obvious" and, therefore, undermines Dr. Tanner's claim to be an inventor. But that is not the law. Structural similarity or dissimilarity between a prior art *compound* and a *compound* sought to be patented may impact a decision on the novelty or non-obviousness of the compound sought to be patented. *See, e.g., Daiichi Sankyo Co., Ltd. v. Matrix Labs., Ltd.*, 619 F.3d 1346, 1352, 1354, 1357 (Fed. Cir. 2010); *see also Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 471 F.3d 1369, 1377-80 (Fed. Cir. 2006); *see also Exhibit E, ¶ 31.* However, the subject matter of Claim 11 of the '265 Patent is not simply a compound − Claim 11 is directed to a combination of elements in a *container* with a particular type of gas barrier additive. *See Exhibit A, col. 36, l. 38 to col. 37, l. 59; col. 40, ll. 1-4.* More importantly, obviousness and anticipation are not in issue because the subject matter of Claim 11 of the '265 Patent is already

4

patented, so those hurdles have already been overcome. This is not a case challenging the validity of Claim 11 or any other claim of the '265 Patent.[1]

Mr. Doll's theory appears to be that, because Coca-Cola already had BPO-1, a species falling within Formula II, Coca-Cola invented all species falling within Formula II. Put differently, Mr. Doll's theory may be that there was nothing left for Dr. Tanner to invent, not even the phenoxy end-capped molecules of Claim 11. Such a theory runs contrary to case law. Again, conception of a chemical substance requires "knowledge of both the specific chemical structure of the compound and an operative method of making it" and "does not occur unless one has a mental picture of the structure of the chemical, or is able to define it by its method of preparation, its physical or chemical properties, or whatever characteristics sufficiently distinguish it." *See Vanderbilt*, 601 F.3d at 1301; *see also Amgen, Inc. v. Chugai Pharm. Co., Ltd.*, 927 F.2d 1200, 1206 (Fed. Cir. 1991). Importantly, conception of a species (such as BPO-1) within a genus (such as Formula II) does not necessarily constitute conception of another species (such as PEM or any other phenoxy end-capped molecule). *See, e.g., Oka v. Youssefyeh*, 849 F.2d 581, 584 (Fed. Cir. 1988).

Whether the structure for PEM is obvious in view of the structure of BPO-1 simply is not relevant to who contributed to the conception of the subject matter of Claim 11. *See, e.g., Lockwood v. American Airlines, Inc.,* 107 F.3d 1565, 1572 (Fed. Cir. 1997) (noting that "[o]ne shows that one is 'in possession' of *the invention* by describing *the invention,* with all its claimed limitations, not that which makes it obvious."). In other words, even if BPO-1 were determined to be structurally similar to PEM, that does not put the named inventors in possession of PEM

---

[1] Even if this were a validity dispute, Claim 11 of the '265 Patent enjoys a statutory presumption of validity (independent of the validity of the other claims in the '265 Patent). *See 35 U.S.C. § 282*.

sufficient to support Claim 11 of the '265 Patent. *See Exhibit E, ¶ 34.* As explained above, potential structural similarity of BPO-1 and PEM or the obviousness of PEM in view of BPO-1 does not bear on whether Dr. Tanner should be a co-inventor of the '265 Patent. The USPTO has already determined that subject matter of Claim 11 of the '265 Patent is patentable, and that determination includes a finding that the subject matter of Claim 11 is not obvious. *Id.; see also Exhibit D, ¶ 39* (citing 35 U.S.C. § 103). Because the issue at trial will be *inventorship* for the '265 Patent and not its validity, whether PEM is obvious in view of BPO-1 is not relevant to the *inventorship* determination, particularly as to Claim 11 of the '265 Patent.

        **b.    Opinions Regarding Earlier Publication of the PEM Structure are not Relevant to the Issue of Inventorship**

Mr. Doll devotes a substantial portion of both of his reports to the theory, for which no case law is cited, that earlier publication of the PEM structure somehow precludes Dr. Tanner from being a co-inventor on the '265 Patent. *See Exhibit B, ¶¶ 69-81, 118; see Exhibit C, ¶¶ 1, 47-52.* For at least two reasons, these opinions are not relevant.

First, no claim of the '265 Patent is directed solely to PEM, the molecule. *See Exhibit A, col. 36, l. 38 to col. 48, l. 53.* Claim 11 of the '265 Patent, the primary claim for which Dr. Tanner is a co-inventor, is not directed merely to PEM, but instead to *containers* with gas barrier additives that have phenoxy groups on each end of the molecule. *See id. at col. 40, ll. 1-4.* The disclosure of PEM alone in the prior art does not anticipate under 35 U.S.C. § 102 a claim using PEM as one element in a multi-element claim. Even if the '265 Patent had naked compound claims, the mere mention of a compound or listing of its structure does not necessarily result in anticipation. *See, e.g., In re Samour,* 571 F.2d 559, 562 (C.C.P.A. 1978), *In re Wiggins*, 488 F.2d 538, 543 (C.C.P.A. 1973), *In re Coker*, 463 F.2d 1344, 1348 (C.C.P.A. 1972), *In re Hoeksema*, 399 F.2d 269, 274 (C.C.P.A. 1968), *In re Brown*, 329 F.2d 1006, 1011 (C.C.P.A. 1964).

Second, and more importantly, there is a distinction between patentability and inventorship, and Mr. Doll ignores that distinction. The issue at trial will be whether Dr. Tanner should be listed as a co-inventor on the '265 Patent. That issue is resolved by determining whether Dr. Tanner contributed to the conception of at least one claim of the '265 Patent in collaboration with at least one named inventor. If he did, he should be listed as a co-inventor. *See Burroughs*, 40 F.3d at 1227-28; *see also Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986); *see also Exhibit D, ¶ 26; see also Exhibit E, ¶¶ 45-47*. If he did not, then he should not be listed as a co-inventor. *See Exhibit E, ¶ 47*. The inquiry is that straight-forward. The USPTO has already determined that the claims of the '265 Patent are patentable and patentability simply does not factor into an inventorship analysis. *Id*.

### c. Opinions Regarding Ethox's Prosecution and Its Ability to Obtain Patent Protection Are Not Relevant

Mr. Doll devotes a substantial portion of both of his reports to the theory, for which no case law is cited, that events in the prosecution of Ethox's own patent applications somehow bear on whether Dr. Tanner is a co-inventor on the '265 Patent. *See Exhibit B, ¶¶ 96-114, 119; see Exhibit C, ¶¶ 1-36, 53-61*. These opinions, too, are not relevant. Mr. Doll has again improperly merged the issue of inventorship for the claims of the issued '265 Patent with the issue of patentability of subject matter not claimed in the '265 Patent, including subject matter for which Ethox seeks patent protection. *See Exhibit E, ¶¶ 48-50*.

The case law makes clear that an invention can be based upon a new and nonobvious combination of old elements. *See, e.g., Leo Pharm. Prods., Ltd. v. Rea*, 726 F.3d 1346, 1353, 1356, 1359 (Fed. Cir. 2013). Whether Dr. Tanner contributed a later-to-be-determined old component to the conception of the invention of Claim 11 of the '265 Patent is *not* the question to be resolved. *See Exhibit E, ¶ 48.* Dr. Tanner originated the contribution of the use of PEM as a

7

gas barrier additive instead of BPO-1 and communicated his contribution to T. Edwin Freeman, a named inventor. *Id*. None of the named inventors testified that they knew of PEM or its properties as a gas barrier additive. *See id.* (referencing the deposition transcripts of, *inter alia*, named inventors Drs. Kriegel, Huang, Freeman, and Schiavone). Dr. Tanner believed that he invented PEM and collaborated with T. Edwin Freeman on its inclusion in the conception of the subject matter of at least Claim 11 of the '265 Patent, qualifying Dr. Tanner as a co-inventor of the '265 Patent. *Id.*

As for prosecution of Ethox's applications, at no point during prosecution of those applications has Ethox sought patent protection for the same subject matter as set forth in Claim 11 of the '265 Patent, or any claim of the '265 Patent. *See Exhibit E, ¶ 49.* Mr. Doll's comments relating to the prosecution of the Ethox applications again fail to recognize the distinction between patentability and inventorship. The issue at trial will be whether Dr. Tanner should be listed as a co-inventor for the '265 Patent. That issue is resolved by determining whether Dr. Tanner contributed to the conception of at least one claim of the '265 Patent in collaboration with at least one of the named inventors. If he did, he should be listed as a co-inventor. *See Burroughs*, 40 F.3d at 1227-28; *see also Hybritech*, 802 F.2d at 1376*; see also Exhibit D, ¶ 26; see also Exhibit E, ¶¶ 48-50*. If he did not, then he should not be listed as a co-inventor. *See Exhibit E, ¶ 50.* The inquiry is that straight-forward. The USPTO has already determined that the claims of the '265 Patent are patentable. Patentability, especially patentability of subject matter *not* claimed in the '265 Patent, *e.g.*, that being pursued in the Ethox applications, does not factor into an inventorship analysis for the '265 Patent. *Id*.

Included within Mr. Doll's opinions regarding the prosecution of Ethox's applications are those directed to the harm Ethox has suffered due to Coca-Cola's taking of Dr. Tanner's invention.

8

*See Exhibit B, ¶¶ 82-117; see also Exhibit C, ¶¶ 52-57.* Due to the Court's ruling on Coca-Cola's Summary Judgment Motions, the harm suffered by Ethox is no longer part of this dispute. *See Dockets 202, 220.* Thus, Mr. Doll's opinions on that issue are no longer relevant and should be excluded.

### d. Opinions Regarding Coca-Cola's Other Patent Applications and Patents Are Not Relevant

Mr. Doll's Supplemental Expert Report includes opinions regarding Coca-Cola's U.S. Patent Application No. 14/228,932, which issued as U.S. Patent No. 9,051,116 ("the '116 Patent"), and Coca-Cola's U.S. Patent Application No. 11/164,181, which published as U.S. Patent Publication No. 2006/0275568 ("the '568 Publication") and issued as U.S. Patent No. 8,545,952 ("the '952 Patent"). *See Exhibit C, ¶¶ 39-46*.

Inventorship for the '265 Patent − not the '116 Patent or the '952 Patent − is the sole issue to be tried. This is not a situation where the proposed testimony is simply "shaky" but still admissible. *See Ravenell*, 2014 WL 7146848, at *2 (citing *United States v. Crisp*, 324 F.3d 261, 269-70 (4th Cir. 2003)). The '116 Patent and the '952 Patent have *nothing* to do with this dispute. Mr. Doll's opinions regarding Coca-Cola's other patent applications and patents are not relevant and should be excluded.

### 2. Opinions on Topics Other Than Conception of the Claims Are Not Reliable

"Rule 702 imposes an obligation on the trial judge to ensure that any expert testimony is grounded on scientific, technical, or other specialized knowledge 'is not only relevant, but reliable.'" *Ravenell*, 2014 WL 7146848, at *8 (quoting *Daubert*, 509 U.S. at 589). In *Daubert*, the Supreme Court provided a non-exhaustive list of four-factors to consider when assessing reliability: (1) whether the expert's theory or technique can be, and has been, tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or

9

potential rate of error when the technique or theory is applied; and (4) whether the theory or technique enjoys "general acceptance" in the relevant community. *See Ravenell*, 2014 WL 7146848, at *8 (citing *Daubert*, 509 U.S. at 593-94).

With regard to at least factors (1) and (4), the absence of legal support for Mr. Doll's theories evidences that his theories have been tested and *rejected* and that his theories do not enjoy "general acceptance" within the patent community. Mr. Doll is not an attorney. *See Exhibit B, ¶ 19*. These realities, coupled with Mr. Doll's repeated failure to distinguish inventorship from patentability and other issues, demonstrate that Mr. Doll's opinions are not reliable and should be excluded.

### C.    MR. DOLL IS NOT QUALIFIED TO PROVIDE EXPERT TESTIMONY

Expert witnesses "have the potential to be both powerful and quite misleading." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (quoting *Daubert*, 509 U.S. at 595). To prevent Mr. Doll from misleading the Court, his opinions on topics for which he lacks expert credentials should be excluded.

Mr. Doll's First Expert Report includes a number of assertions regarding the content, from a chemical standpoint, of several Coca-Cola patent applications: 60/558,494, 11/095,053, and 11/146,918. *See Exhibit B, ¶¶ 29-39*. That Report also includes an assertion regarding the structural difference between BPO-1 and PEM. *See Exhibit B, ¶ 52*. Not one of these assertions is supported by a citation to evidence from an expert in chemistry. *See Exhibit B, ¶¶ 29-39, 52*. Mr. Doll offers his opinions "based on [his] experience at the USPTO" − not as a chemical expert. *See Exhibit B, ¶ 19*. Because Mr. Doll is not qualified to testify as an expert in chemistry, his unsupported opinions on chemistry-dependent issues should be excluded.

The absence of legal support for Mr. Doll's theories regarding inventorship and his repeated failure to distinguish inventorship from patentability and other issues also demonstrate that Mr. Doll is not qualified to assist the Court in this inventorship dispute.

**D.      CONCLUSION**

There is but one issue to try in this case − whether Dr. James Tanner is a co-inventor of subject matter claimed in the '265 Patent.  Whether Dr. Tanner is a co-inventor hinges solely on whether he contributed to the conception of the subject matter of at least one of the claims of the '265 Patent.  Opinions on other topics − alleged structural similarity between PEM and BPO-1, earlier publication of the PEM structure, Ethox's own prosecution and its ability to obtain patent protection (*See Exhibit G, proposed exhibits highlighted in purple and yellow*), and Coca-Cola's other patent applications and patents (including the chemistry therein) − are neither relevant nor reliable and should be excluded.

                                                                    Respectfully submitted,

Dated:  August 31, 2015                        /s Amy M. Snyder
                                                                    Amy M. Snyder, Esq. (Federal ID: 0980)
                                                                    N. Heyward Clarkson, III (Federal ID: 0154)
                                                                    CLARKSON, WALSH, TERRELL & COULTER P.A.
                                                                    1164A Woodruff Road (29607)
                                                                    P.O. Box 6728
                                                                    Greenville, South Carolina 29606
                                                                    Telephone:  (864) 232-4400
                                                                    Facsimile:  (864) 235-4399
                                                                    Email: hclarkson@clarksonwalsh.com
                                                                    Email: asnyder@clarksonwalsh.com

                                                                    Philip L. Hirschhorn, Esq. (admitted *pro hac vice*)
                                                                    Aaron L. J. Pereira, Esq. (admitted *pro hac vice*)
                                                                    BUCHANAN INGERSOLL & ROONEY PC
                                                                    1290 Avenue of the Americas, 30th Floor
                                                                    New York, New York 10401
                                                                    Telephone:  (212) 440-4400
                                                                    Facsimile:  (212) 440-4401
                                                                    Email: philip.hirschhorn@bipc.com
                                                                    Email: aaron.pereira@bipc.com

Erin M. Dunston, Esq. (admitted *pro hac vice*)
BUCHANAN INGERSOLL & ROONEY PC
1737 King Street, Suite 500
Alexandria, Virginia 22314
Telephone:  (703) 836-6620
Facsimile:  (703) 836-2021
Email: erin.dunston@bipc.com

Travis W. Bliss, Ph.D., Esq. (admitted *pro hac vice*)
BUCHANAN INGERSOLL & ROONEY PC
919 North Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone:  (302) 552-4201
Facsimile:  (302) 552-4295
Email: travis.bliss@bipc.com